**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| V. | ) | Criminal No. 07-166 |
| | ) | Judge Nora Barry Fischer |
| COREY WADLEY, | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

This matter is before the Court on a Motion to Suppress Evidence (DE [39]), filed by

Defendant Corey Wadley on October 31, 2007. On November 9, 2007, the Government filed its

Response to Motion to Suppress Evidence. On November 29, 2007, the Court held an evidentiary

hearing as to Defendant's motion to suppress, at which Officer Morgan Jenkins testified on behalf

of the Government and the Court heard subsequent argument from the parties. For the following

reasons, said motion is denied.

## FACTS

On February 12, 2007, at approximately 5:46 a.m., Pittsburgh Police Officers Morgan

Jenkins and Tim Matson responded to two separate 911 emergency calls at 2253 Wilner Drive,

Pittsburgh, Pennsylvania, relayed through the 911 dispatcher. Tr. at 5:20-7:3. The first call, placed

by a male, reported that "there was possibly someone being held captive against their will at [2253

Wilner Drive]." Tr. at 6:20-22. In response to that call, Officer Jenkins and Matson proceeded to

that location. Tr. at 14:17-19. While en route, the second call, placed by a female, reported "some

type of domestic dispute." Tr. at 7:1-3; 14:20-23.

Upon arriving at the residence, Officer Jenkins testified that, as he approached the front door

of the residence, he heard "some type of commotion" and "lots of different voices yelling and

screaming" from inside the residence. Tr. at 8:2-4. The police officers knocked on the door and a woman later identified as Garnette Blue opened the door.[1] Tr. at 8:8-11. Officer Jenkins testified that Ms. Blue invited the officers to come inside the residence. Tr. at 8:13. As the police officers entered the residence, Ms. Blue pointed at the Defendant, who was standing at the top of a short stairway near the door of the residence, and, according to Officer Jenkins' testimony, she stated that he was "acting crazy." Tr. at 8:25-9:11. Defendant Wadley responded that he made the 911 telephone call and that he wanted the police officers to follow him. Tr. at 9:13-14 ("[Defendant Wadley] gestured to [Officer Jenkins] and stated that he is the one that had dialed 911 and [Officer Jenkins] should follow him or come with him"). As Officer Jenkins began to walk towards him, Defendant Wadley walked away out of Officer Jenkins' line of sight and Officer Jenkins immediately followed the Defendant. Tr. at 9:15-20.

Officer Jenkins observed the Defendant enter a bedroom and sit on the foot of the bed. Tr. at 10:3; 10:19-20. As Officer Jenkins entered the room, the Defendant stated "this is where the real show is." Tr. at 11:12. Officer Jenkins observed two objects laying on the top of the square bedpost approximately less than a foot from the Defendant's left elbow, which he immediately recognized as crack cocaine. Tr. at11:16-18; 11:25-12:5. After observing the contraband, Officer Jenkins asked the Defendant to stand and placed him in custody. Tr. at 12:17-20. Officers Jenkins testified that from the time that he and his partner reached the front door of the residence to the time when he saw the two objects on the bedpost approximately one minute elapsed. Tr. at 12:21-25.

In conducting a search incident to arrest, Officer Jenkins found a plastic baggie containing

---

[1]

Sometime after the entry and arrest of Defendant, the officers verified that Ms. Blue lived at the residence at 2253 Wilner Drive. *See* Tr. at 23:21-22:6.

a "large piece of crack cocaine." Tr. at 13:17-18.[2]

While Defendant and Officer Jenkins were still in the bedroom, Wadley continually informed Officer Jenkins that someone was under the bed. Tr. at 13:7-8. Heeding this warning, Officer Jenkins looked under the bed but did not locate anyone. Tr. at 13:9-12. Officer Jenkins then escorted Wadley from the residence. Tr. at 13:20-22.

After Wadley's arrest, Ms. Blue provided written consent to search her bedroom, the same room in which Officer Jenkins arrested the Defendant. During the execution of the search, the police officers found a small baggie of marijuana, a loaded .38 caliber revolver and a set of metal knuckles in a dresser drawer containing women's underwear, ammunition for a .38 caliber revolver under the bed, and a partially empty box of sandwich baggies. Docket No. 43, at 3-4.

Subsequently, on or about April 24, 2007, the Government filed an Indictment charging Defendant Corey Wadley with knowingly, intentionally, and unlawfully possessing with the intent to distribute five (5) grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Schedule II controlled substance, in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii).

### ARGUMENTS PRESENTED

In his motion, the Defendant offers four arguments: (1) there was no valid search warrant to search the residence; (2) there were no exigent circumstances to permit the search of the residence without a search warrant; (3) the arrest of the Defendant and resulting search incident to arrest were without probable cause and a result of the initial illegal search and seizure within the residence; and

---

[2]

In its response brief, the Government asserts that Officer Jenkins discovered "over 20 grams of crack cocaine" in Defendant's pants pocket. (Docket No. 44, at 3).

(4) there was no valid consent to search the residence as Defendant did not knowingly, intelligently, and voluntarily consent to the search of the residence. (Docket No. 39, 2-3). Responding to all of Defendant's arguments, the Government asserts that "[t]he entry of the residence that led to Wadley's arrest was a consensual entry made under exigent and emergent circumstances, and Wadley's arrest was supported by probable cause that Wadley possessed crack cocaine." (Docket No. 43, at 1).

## ANALYSIS

Before addressing the substance of the parties' argument, the Court notes that it is well-settled that, at a hearing on a motion to suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. Richardson*, 501 F.Supp.2d 724, 734 (W.D. Pa. 2007) (citations omitted).

A.      *Entry into home*

"It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)). "Warrantless searches and seizures inside someone's home ... are presumptively unreasonable unless the occupants consent *or* probable cause and exigent circumstances exist to justify the intrusion." *United States v. Coles*, 437 F.3d 361, 365-366 (3d Cir. 2006) (citations omitted) (emphasis added); *see also United States v. Smith*, 224 Fed.Appx. 194, 197, 2007 WL 1470207, at *3 (3d Cir. 2007)

(same).[3]

However, as a threshold point, the Government asserts that, in order to afford protection under the Fourth Amendment, Defendant must establish that he had a reasonable expectation of privacy at 2253 Wilner Drive. *See Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990) (concluding that respondent's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable"); *Minnesota v. Carter*, 525 U.S. 83, (1998) (framing the issue not as standing but whether a person "has an expectation of privacy in the place searched, and that his expectation is reasonable" and finding that respondents who were not overnight guests but were "present for a business transaction and were only in the home a matter of hours" had no legitimate expectation of privacy in the dwelling). As to this point, Officer Jenkins testified that Ms. Blue informed the officers that the Defendant was her boyfriend who stayed at the residence "occasionally". Tr. at 24:11-12. While the Court declines to hold whether said testimony amounts to a legitimate expectation of privacy in the residence at 2253 Wilner Drive, the Court will nevertheless assume the same for purposes of this motion and reach the merits.

---

[3]

The Supreme Court has noted these exceptions to the warrant requirement of the Fourth Amendment. *See generally Payton v. New York*, 445 U.S. 573 (1980); *see also Steagald v. United States*, 451 U.S. 204, 214 n.7 (1981) ("[A]bsent exigent circumstances *or* consent, an entry into a private dwelling to conduct a search or effectuate an arrest is unreasonable without a warrant") (emphasis added); *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984) ("Consistently with these long-recognized principles, the Court decided in *Payton v. New York* ... that warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances") (emphasis added); *Minnesota v. Olson*, 495 U.S. 91, 100 (1990) (quoting *Welsh*, 466 U.S. at 749 (1984)).

1.      *Consent*

In *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), the Supreme Court refined the consent and waiver exception to the warrant requirement of the Fourth Amendment by removing the knowledge or intelligent requirement of a voluntary waiver.  *Id.* at 235[4]; *see also United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005) ("Consent must be voluntary, may be express or implied, and need not be knowing or intelligent") (citing *Bustamonte*, 412 U.S. at 235).  Instead, the test established under *Bustamonte* addressed only the voluntariness of consent under the "totality of the circumstances" and knowledge of the right to refuse to consent is only one factor in considering voluntariness:   "In short, neither this Court's prior cases, nor the traditional definition of 'voluntariness' requires proof of knowledge of a right to refuse as the sine qua non of an effective consent to a search."  *Bustamonte*, 412 U.S. at 234; *see Lockett*, 406 F.3d 207, 211 (providing that consent "may be given unintentionally and without knowledge of the right to refuse consent, and the police are not required to warn an individual of the right to refuse consent").  Relevant factors include age and maturity, education level, intelligence, ignorance of one's constitutional rights and the nature and duration of questioning and pressure.  *U.S. v. Cole*, No. 06-1904, 2007 WL 2461776,

---

[4]

In *Bustamonte*, the Supreme Court noted:

> It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable ... subject only to a few specifically established and well-delineated exceptions.  It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.

*Bustamonte*, 412 U.S. at 219 (internal quotations and citations omitted).

6

at *5 (3d Cir. Aug. 31, 2007).  The Government bears the burden of demonstrating that consent to search was given by a preponderance of the evidence.  *United States v. Richardson*, 501 F.Supp.2d 724, 734 (W.D. Pa. 2007) (citing *United States v. Matlock*, 415 U.S. 164, 177 (1974)); *see also United States v. Morales*, 861 F.2d 396, 399 (3d Cir. 1988).

Here, the Court finds that both Ms. Blue and the Defendant consented to the officers' entry into the home.  First, with regard to Ms. Blue, Officer Jenkins testified that she invited the officers to enter the residence and the Defendant has offered no evidence to the contrary.[5]  *See* Tr. at 8:13 ("Q[uestion-Mr. Haller]: What happened after Garnette] Blue answered the door?  Answer-Officer Jenkins]: She asked us to come in").  Thus, the Court finds with little trouble that Ms. Blue's statement manifested express consent to Officer Jenkins and Officer Matson to enter the residence on the morning of February 12.  Second, with regard to the Defendant, to the extent that the police officers required the consent of the Defendant, he also expressly consented by stating to Officer Jenkins that he (Officer Jenkins) should follow him or come with him and then, as Officer Jenkins walked toward him, proceeding to walk away as if to lead the Officer.  *See* Tr. at 9:13-18.[6]  As such, Defendant's words demonstrate his express consent for Officer Jenkins to enter the residence and Defendant's actions demonstrate his implied consent for Officer Jenkins to subsequently follow him.

"In this context, words matter and officers are entitled to rely on them. ...  A rule of law that

---

[5]
 The Court notes that Defendant has offered no evidence or argument that the police officers' exerted any coercion towards Ms. Blue or the Defendant as to their entering the residence. In point of fact, Officer Jenkins testified that Ms. Blue invited the officers into the residence as opposed to a response to a request by the officers that may be construed in some instances as tantamount to a command or order.

[6]
 The Court notes that Defendant offered no evidence or even argument disputing the validity of these statements.

would prohibit officers from relying upon such a clear, unequivocal consent would vitiate the fundamental concept of obtaining consent." *United States v. Plummer*, No. 2:05-cr-336, 2007 WL 2973712, at *3 (W.D. Pa. Oct. 10, 2007) (finding that defendant's girlfriend's response of "[g]o ahead" and stepping aside and gesturing toward steps in response to agents' request to search her home constituted "unambiguous verbal assent"). Furthermore, the Court finds no evidence of police coercion or pressure to consent to a search exerted upon Ms. Blue or the Defendant. *See Cole*, 2007 WL 2461776, at *5 (noting "nature and duration of questioning and pressure" as one of the factors to consider). Accordingly, the Court finds that both Ms. Blue and the Defendant voluntarily consented to the police officers' entry and search of the residence at 2253 Wilner Drive.[7]

Furthermore, while not raised by either party, the Court notes that "[w]hen an official search is properly authorized whether by consent or by the issuance of a valid arrest warrant the scope of the search is limited by the terms of its authorization." *Walter v. United States*, 447 U.S. 649, 656 (1980). "The standard for determining the scope of consent is objective reasonableness, or what a reasonable third person would have concluded." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Based on Ms. Blue's characterization of the Defendant at the time as "acting crazy" as well as Defendant's words and actions, specifically Defendant's apparent invitation to Officer Jenkins to follow him upstairs as well as Defendant's movement away from Officer Jenkins and into another room, *see* Tr. at 9:18-22, the Court finds that the scope of the consent extended to the upstairs of the home. Furthermore, the Court pays credence to Officer Jenkins' testimony regarding the need to

---

[7]

Moreover, the Court notes that after the police officers arrested Defendant Wadley and escorted him from the residence, Ms. Blue again consented to a search of her home–this time in writing.

keep all persons in a domestic violence situation in plain view of the police officers in order to protect themselves and the other occupants of the dwelling. *See* Tr. at 9:22-24 ("And in a domestic situation, I don't want to lose track of anybody. He could be going for a weapon, could be a psychotic person. I don't know what's going on"). Accordingly, considering the totality of the circumstances, the Court finds that Officer Jenkins' decision to follow Wadley upstairs and into the bedroom was entirely reasonable.[8]

2.    *Exigent circumstances*

"Examples of exigent circumstances include, but are not limited to, hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others." *Coles*, 437 F.3d at 366 (citations omitted); *see also United States v. Halley*, 841 F.Supp. 137, 139 (M.D. Pa. 1993) (citing *United States v. Velasquez*, 626 F.2d 314, 317 (3d Cir. 1980) ("Recognized exigent circumstances include hot pursuit of a suspect into his home, the risk of destruction of evidence, potential escape of suspects, and threats of physical harm to law enforcement officers or other innocent individuals"). "In these limited situations, the need for effective law enforcement trumps the right of privacy and the requirement of a search warrant, thereby excusing an otherwise unconstitutional intrusion." *Id.*, at 366 (citing *Warden v. Hayden*, 387 U.S. 294, 298-99 (1967) (internal footnote omitted)). Whether exigent circumstances justify a warrantless search or seizure is determined from the totality of the circumstances, as they were reasonably known to, or discoverable by, officers at the time of the entry. *Parkhurst v. Trapp*, 77

---

[8]

   While the Court finds that both Ms. Blue and Defendant voluntarily consented to the entry and search of the residence at 2253 Wilner Drive on the morning of February 12 and thus the police officers' presence there was lawful, the Court will nevertheless address exigent circumstances.

F.3d 707, 711 (3d Cir. 1996). "This determination is made on a case-by-case basis and focuses simply on what a reasonable, experienced police officer would believe given the circumstances." *Dorkoski v. Pensyl*, Civil Action No. 4:05-0705, 2007 WL 775602, at *6 (M.D. Pa. March 9, 2007) (citing *U.S. v. Reed*, 935 F.2d 641 (4th Cir. 1991); *U.S. v. Williams*, 431 F.3d 1115 (8th Cir. 2005)). Once again, the Government bears the burden "to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1980) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980).

Specifically here, the Government argues that exigent circumstances in the form of danger to others and to the police officers at the scene justified the actions of the same police officers. *See Brigham City, Utah v. Stuart*, 126 S. Ct. 1943, 1947 (2006) ("One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury"); *see also Mayo v. City of York, PA*, Civil Action No. 1:04-CV-2272, 2007 WL 91599, at *8 (M.D. Pa. Jan. 9, 2007) ("The need to protect or preserve life or avoid serious injury is an exigent circumstance that justifies a warrantless entry and search of a home"). In considering the reasonableness of the officer's actions, a Court looks to whether "the circumstances, viewed *objectively*, justify [the] action." *Brigham City*, 547 U.S. at 1948 (citing *Scott v. United States*, 436 U.S. 128, 138 (1978) (emphasis and alteration in original)). In particular here, the Government relies on *United States v. Black*, 482 F.3d 1035 (9th Cir. 2007) as well as *United States v. Martinez*, 406 F.3d 1160 (9th Cir. 2005), which concluded that reports of domestic violence created circumstances (exigent in *Black* and emergent in *Martinez*) justifying warrantless entries into the home.[9]

---

[9]

*See also Daniels v. County of Media*, 2001 WL 487859, at *3 n.3 (E.D. Pa. 2001) (noting that "[s]everal courts have held that a 911 dispatch call indicating that a domestic disturbance is in

While this Court declines to hold that a 911 emergency call reporting domestic violence *per se* provides for a finding of exigent circumstances, the Court finds that the police officers' entry into the home was plainly reasonable based on the totality of the circumstances presented here. In addition to the 911 emergency telephone call relaying a domestic violence incident, the Court finds significant that the police officers also received a 911 emergency telephone call via the dispatch officer reporting a possible hostage situation *at the same address*. Therefore, assuming *arguendo* that Ms. Blue's answering the door alleviated any exigency related to the domestic violence call, *see Black*, 482 F.3d at 1039-41 (finding exigency where police officers could not find the 911 caller and purported victim of domestic violence dispute), a point the Court does not concede, based on the knowledge of the police officers at the time and transmitted to them through the 911 dispatch officer, the police officers were still responding to a possible hostage situation or the possibility of other victims of domestic violence in the residence. *See U.S. v. Holloway*, 290 F.3d 1331, 1339 (11th Cir. 2002) (providing that "the fact that a 911 caller chooses-or is forced-to remain anonymous may very

─────────────────────

progress at a residence can be sufficient to establish the existence of exigent circumstances in which it is objectively reasonable for the police to enter the residence without a warrant, unless circumstances at the residence indicate that entry is unnecessary") (citing *State v. Greene*, 784 P.2d 257, 159 (1989), *rev'd in part on other grounds*, 182 Ariz. 576, 898 P.2d 954 (1995); *Tierney v. Davidson*, 133 F.3d 189, 197 (2d Cir.1998) ("Courts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger")); *U.S. v. Brooks*, 367 F.3d 1128, 1136 (9th Cir. 2004) (providing "that the exigencies of domestic abuse cases present dangers that, in an appropriate case, may override considerations of privacy"); *Fletcher v. Town of Clinton*, 196 F.3d 41, 50 (1st Cir. 1999) ("On the spot reasonable judgments by officers about risks and dangers are protected. Deference to those judgments may be particularly warranted in domestic disputes. In those disputes, violence may be lurking and explode with little warning. Domestic violence victims may be intimidated or suffer from a dependence inherent in the abusive relationship. The signs of danger may be masked"). *But see United States v. Davis*, 290 F.3d 1239, 1244 (10th Cir. 2002) (holding "an officer's warrantless entry of a residence during a domestic call is not exempt from the requirement of demonstrating exigent circumstances").

well have little bearing on the veracity of the caller. If law enforcement could not rely on information conveyed by anonymous 911 callers, their ability to respond effectively to emergency situations would be significantly curtailed"). Furthermore, the Court highlights Officer Jenkins' credible testimony regarding the inherent danger and unpredictability of domestic violence disputes. *See* Tr. at 7:9-16 ("Q[uestion]: Can you describe the situation as an officer in response to a domestic situation? A[nswer]: It's tense. You don't know what you are dealing with when you get there. When you get there, sometimes the people that called you can turn on you if you are going to arrest someone they don't want you to arrest. You don't know what's going to happen, and you don't know who is at fault and who is armed, if anyone is high on drugs. Yon don't know any of those things. They just dispatch you and say help, they are fighting"). In the case at bar, in which citizens call upon police officers to enter a possibly volatile situation, the Court finds that the same police officers' on-the-spot decision to enter the home without a warrant, a decision which transpired over the matter of approximately one minute, was reasonable.

In addition, the Court finds pertinent the subject matter of the 911 emergency telephone calls which motivated the police officers' response and ultimate entry and search of the residence, i.e., a reported domestic violence dispute and a hostage situation. In *Welsh*, the Supreme Court held that the nighttime, warrantless entry into the home to arrest an individual for driving while under the influence of an intoxicant was prohibited by the Fourth Amendment. *Id.*, at 754. Relevant here, the Court held "that an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is made." *Id.*, at 753. Here, the Court finds that the alleged offenses for which the police officers responded, i.e., domestic violence and a hostage situation, which served as the predicates for the exigent circumstances, constitute serious

and violent offenses as opposed to a mere "civil traffic offense." *Id.*, at 753.

In sum, considering the totality of the circumstances, in particular the two 911 emergency telephone calls reciting a domestic violence dispute and a hostage situation, respectively, coupled with the police officers hearing commotion as well as yelling and screaming upon approaching the home and Ms. Blue's characterization of Defendant as "acting crazy", all taken together, establish both the probable cause and exigent circumstances necessary for a warrantless entry and search of the residence.[10]

B.    *Defendant's arrest*

The Defendant next argues that his arrest and resulting search incident to arrest were without probable cause and a result of the initial illegal search and seizure within the residence. The Government asserts that Officer Jenkins "was lawfully present at the door of the bedroom when he plainly viewed the crack cocaine on the flat bedpost right beside Wadley." (Docket No. 43, at 11). In support thereof, the Government relies on the plain view doctrine.

Because this Court has found that the police officers lawfully entered the home based on Ms. Blue's and Defendant's consent as well as the presence of exigent circumstances, the Court now turns to the arrest of the Defendant and whether said arrest was supported by probable cause. The Court will address Defendant's arrest in the following manner: (1) whether Officer Jenkins lawfully seized the objects on the bedpost within the plain view doctrine; (2) whether Officer Jenkins possessed probable cause to arrest the Defendant; and (3) whether Officer Jenkins properly executed

---

[10]

The Court notes that the Third Circuit has, on at least one occasion, combined the analysis and findings of probable cause and exigent circumstances. *See Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006).

a search incident to arrest.

1. *Plain view*

In *Katz v. United States*, 389 U.S. 347 (1967), the Supreme Court held that a "search" or "seizure" only falls within the meaning of the Fourth Amendment when the conduct by the agent of the government intrudes upon a person's reasonable expectation of privacy.[11]  *Id.*, at 350-52. However, the majority in Katz noted that "what one knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Id.*, at 351.  Justice Harlan further elaborated on this point in his concurrence: "[A] man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited." *Id.*, at 361 (Harlan, J., concurring).  One year after the Court's decision in *Katz*, the Supreme Court again allowed the seizure of articles within the visual observation of police officers without Fourth Amendment implication, broadly noting: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. U.S.*, 390 U.S. 234, 236 (1968) (per curiam).  Finally, in *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), the Court laid out a test for the application of the plain view doctrine: (1) prior justification for the government's intrusion into an otherwise protected area (such as a home); and (2) the immediately apparent incriminating nature of evidence.[12]  See also

---

[11]

In order to implement this standard, the *Katz* Court laid out the following test: "[T]here is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' " *Katz*, 389 U.S. at 361 (Harlan, J., concurring).

[12]

While the Court in *Coolidge* noted a third requirement, specifically that the government agent

*Horton v. California*, 496 U.S. at 136 (noting that "an essential predicate to any valid warrantless seizure of incriminating evidence [is] that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed", and two additional conditions are that the item must be in "plain view" and "its incriminating character must also be 'immediately apparent' ").

Here, as to the first requirement, this Court previously concluded that Officer Jenkins possessed prior justification to be not only in the home but in the doorway of the bedroom by way of consent as well as the existence of exigent circumstances. As to the second requirement, Officer Jenkins testified that, based on training as well as his three years of experience, he immediately recognized the objects on the bedpost near the left elbow of the Defendant, which were in plain view, as contraband, specifically crack cocaine. *See generally* 21 U.S.C. §§ 812 and 841. Accordingly, the Court finds that Officer Jenkins legitimately seized the contraband in his plain view. *See Coolidge*, 403 U.S. at 465 (1971) ("Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate").

2.  *Probable cause to arrest*

As this Court has previously found that the police officers possessed legitimate grounds (by way of consent as well as the existence of exigent circumstances) to be in the residence at 2253

---

had inadvertently discovered the evidence, or that the police had not had probable cause to believe that they would find the objects discovered before they entered the area, *see Coolidge*, 403 U.S. at 466, the Court later abandoned that requirement, *see Horton v. California*, 496 U.S. 128, 130 (1990) ("We conclude that even though inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition"). Nevertheless, as there is no evidence that the Government suspected the presence of drugs at the home but instead responded to two domestic violence calls, the discovery of same in plain view by Officer Jenkins was truly inadvertent.

Wilner Drive on the morning of February 12, the Court now turns to the separate and distinct inquiry

of whether there was probable cause to arrest the Defendant. *See U.S. v. Myers*, 308 F.3d 251, 265

(3d. Cir. 2002) (drawing a distinction as to the "inquiry and interests implicated when considering

the Fourth Amendment's protection from illegal seizures, as opposed to illegal searches") (citing

*Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1245 (7th Cir. 1994) ("Once the veil of the home has been

legally pierced, we see no need for police officers to turn a blind eye to crime, so long as the arrest

is otherwise effected in compliance with the constitutional requirement of probable cause")).[13]

"The probable cause necessary for an arrest requires a showing 'that probable cause exists

to believe that the subject [in the case of an arrest warrant] has committed an offense and thus ...

primarily serves to protect an individual from an unreasonable seizure." *U.S. v. Myers*, 308 F.3d

251, 263-264 (3d. Cir. 2002) (quoting *Steagald v. United States*, 451 U.S. 204, 213 (1981))

(alteration in original). Courts in the Third Circuit apply a "common sense approach," based on the

totality of the circumstances, to determine whether law enforcement officials had probable cause to

arrest. *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir.2000) (citing *Sharrar v. Felsing*, 128 F.3d 810,

818 (3d Cir. 1997)). Probable cause "is a fluid concept-turning on the assessment of probabilities

in particular factual context-not readily, or even usually, reduced to a neat set of legal rules." *Illinois*

*v. Gates*, 462 U.S. 213, 232 (1983).

---

[13]

The Court is cognizant of the Supreme Court's decision in *Payton v. New York*, in which the Court stated that: "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home are presumptively unreasonable." *Id.*, at 586. However, as this Court has previously found that the police officers obtained consent and possessed exigent circumstances to enter the home, the inquiry now turns to probable cause to arrest. See *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) ("As *Payton* makes plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home").

Here, the Court finds that given the fact that the drugs were in plain view and on display coupled with Defendant's proximity to the same and his statement "this is where the real show is" reflects knowledge of and probable involvement in illegal narcotics activity. *See United States v. Holder*, 990 F.2d 1327, 1329 (D.C. Cir. 1993); *see also Maryland v. Pringle*, 540 U.S. 366, 372 (2003) (where police officers searched a vehicle based on consent and recovered $763 and "five plastic glassine baggies containing cocaine from behind the back-seat armrest" and arrested all three occupants without a warrant, the Supreme Court concluded that it is "an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine"). As such, considering the totality of the circumstances, the Court finds that Officer Jenkins possessed sufficient probable cause to arrest insofar as a reasonable person could have concluded that Defendant committed or was committing a controlled substance offense.[14]

3.      *Search incident to arrest*

Finally, the Court turns to the search incident to arrest. In *Chimel v. California*, 395 U.S. 752 (1969), the Supreme Court found that when a lawful arrest is made, it is reasonable for the arresting officer "to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape" and "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Id.*, at 763. In defining the scope of the search incident to arrest, the Court held that an arresting officer may search the "arrestee's person and the area 'within his immediate control'-construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.*

---

[14]

     The Court notes that "the standards required for proof of possession beyond a reasonable doubt and for probable cause for an arrest are quite different." *Holder*, 990 F.2d at 1329.

However, subsequent to *Chimel*, the Supreme Court refined the standard for a search incident to arrest concluding that courts need not engage in a case-by-case adjudication as to the underlying rationale of the search incident to arrest, i.e., to prevent violence and protect the arresting officer or prevent the destruction of evidence:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires *no additional justification*. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

*U.S. v. Robinson*, 414 U.S. 218, 235 (1973) (emphasis added). As Defendant's arrest was supported by probable cause that Wadley committed or was committing the crime of possession of a controlled substance, *see supra*, the Court finds that the search incident to arrest was reasonable.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's Motion to Suppress Evidence (DE [39]).[15]

---

[15] The Court notes that Defendant indicates, in the first sentence of his motion, that he seeks to suppress "both physical evidence and statements". (*See* Docket No. 39, at 1). However, in the last sentence of his motion, Defendant only refers to "the items seized from within the residence and from Defendant's person". (*See* Docket No. 39, at 3). Defendant's motion provides no argument as to suppression of the Defendant's statements, with the exception of the first sentence, and counsel for the Defendant made no reference to the same at the hearing. In fact, Defendant fails to specify which statements that he seeks to suppress, leaving the Court to speculate. In addition, the Government's response is devoid of any reference to Defendant's statements. Accordingly, because this issue has not been briefed with the exception of Defendant's passing reference thereto, the Court

s/ Nora Barry Fischer
United States District Judge

Date:   December 28, 2007

cc:     All parties of record.

---

declines to consider Defendant's motion to the extent that it seeks suppression of Defendant's statements but the Defendant may revisit this issue with another motion if he sees fit.